JAMES B. JOHNSON, Appellant, v. SUBURBAN REALTY COMPANY *et al.*, Respondents.

St. Louis Court of Appeals, April 23, 1895.

1. **Promissory Notes:** BREACH OF TRUST BY CORPORATE AGENT: NOTICE.  One who purchases a promissory note from an officer of a corporation for a consideration, which, in whole or part, consists of his release of a demand against such officer individually, is not a purchaser in good faith, if he makes the purchase with the knowledge that the note belongs to, and is being held by such officer for the purposes of, such corporation.

2. **Instructions:** NON-PREJUDICAL ERROR.  A party can not complain of an inconsistency in instructions, which results from one of them being too favorable to him.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*W. B. Homer* and *Chester H. Krum* for appellant.

*John M. Glover* for respondents.

ROMBAUER, P. J.—The defendant company is a corporation.  The defendant Parker was at the time hereinafter stated its president, the defendant Thompson one of its directors, and one Stebbins its treasurer. Stebbins was also treasurer of the Stebbins-Thompson Realty Company, another corporation.  On the seventeenth day of April, 1893, the defendant company made its negotiable promissory note for $1,525, payable

ninety days after date to the order of Stebbins as treasurer. This note was indorsed by the defendant Parker and Thompson, and bought by the plaintiff from Stebbins on the twenty-fourth of April, 1893, for $1,350. The plaintiff at that date gave to Stebbins in payment of the note $250, and paid him the residue, less $112, on the twenty-ninth of that month. The $112 deducted consisted of the amount of a judgment against Stebbins which the plaintiff held, and which was settled by this transaction.

The note not being paid at maturity, the plaintiff brought the present action against the defendant company, Parker and Thompson. The defendant company answered, stating that Stebbins had purloined the note and sold it without its knowledge and consent, and that plaintiff knew these facts when he bought it. The defendants Parker and Thompson answered that the note was never delivered by the maker, that it was indorsed by them conditionally, and that, before the condition was satisfied, Stebbins stole the note, and, without the knowledge of the defendants, sold it to the plaintiff, who had notice of the facts. The plaintiff took issue on the answers by reply. On a trial of the cause before a jury, such proceedings were had that the defendants recovered a verdict and judgment, from which the plaintiff prosecutes the present appeal. The assignments of error relate exclusively to the giving and refusal of instructions.

On the trial of the cause the plaintiff introduced the note, and, it being admitted that all steps to charge the indorsers had been duly taken, rested. The defendants thereupon gave evidence tending to show the following facts: The note in question was made by the company and indorsed by the defendants Parker and Thompson with an understanding, that it should likewise be indorsed, before delivery, by the other direct-

ors of the defendant company, and used for the purpose of lifting a mortgage which was on one of the company's lots. After the note was thus made and indorsed by the defendants Parker and Thompson, the latter and Stebbins took it to the plaintiff, and explained to him that it would be secured by additional collateral as soon as the mortgage was lifted, and would be a safe investment, and offered to sell the note to him. The plaintiff was told at the time that the note was the property of the defendant company. The plaintiff declined to buy the note at the time, and it was left in the possession of Stebbins. Some time afterward, the defendants demanded the note from Stebbins, who replied that he had mislaid it. The defendants next heard of the note by receiving notice of its dishonor from the bank, where the plaintiff had left it for collection. Neither the defendant company nor the other defendants received any value whatever for the note.

The plaintiff then testified in rebuttal, denying that he had seen the note until he bought it under the circumstances first hereinabove stated, and paid for it in the manner above stated. The plaintiff also testified that he had bought a number of notes from the defendant company prior to this time, and that he did not know that any defenses existed to this note. He stated that he did not know at the time when he bought the note that Stebbins was a thief, but failed to furnish any explanation how he came to deduct the judgment which he held against Stebbins from the purchase price, or how Stebbins came to indorse the name of the Stebbins-Thompson Realty Company on the note, which he conceded was done in his presence and after Stebbins had offered the note to him for sale.

This being all the evidence adduced, the court refused the following instruction asked by plaintiff: "There is no evidence that Stebbins abstracted or stole

the note sued on from the Suburban Realty Company."

There was ample evidence, uncontradicted, in the case, that Stebbins held the note only as custodian of the defendant company, that he disposed of it for his individual purposes, and appropriated the proceeds. The complaint, therefore, that the court erred in refusing this instruction is clearly untenable.

We refrain from setting out the instructions given in full. They are seven in number, and unnecessarily voluminous. The plaintiff's objection is limited to three of them, and is an objection not to the tenor of each singly, but on account of their inconsisteney with each other, and with other instructions given. Among the other instructions given some told the jury that it rested with the defendants to show that the conduct of Stebbins in negotiating the note was fraudulent, and also that the plaintiff acquired it in bad faith,—that is to say, either had actual knowledge, or else was willfully ignorant of existing defenses to the note.

The court then gave the following instruction, of which the plaintiff now complains as inconsistent with the instructions thus given:

"That, if the jury believe and find from the evidence in the cause that, at the time or before the appellant bought the note, he knew that Stebbins was the treasurer of the Suburban Realty Company, and that the company was the owner of the note, and was attempting to discount the note for the purpose of raising funds for the use of the company; that, after he was in possession of such knowledge, appellant bought the note from Stebbins and under an agreement that part of the purchase money should be applied to paying a judgment held by appellant against Stebbins, then, as a matter of law, the appellant could not recover against the Suburban Realty Company, or Thompson

and Parker, unless they consented to or authorized the sale of the note."

The inconsistency between this instruction and former instructions given is more apparent than real. It is well settled that a party can not appropriate partnership property for the payment of his individual debts without the consent of his copartners, and that a person who acquires property in that manner obtains no title thereto which he can enforce against the dissenting members of the firm. *Ackley v. Staehlin*, 56 Mo. 558; *Price v. Hunt*, 59 Mo. 258; *Forney v. Adams*, 74 Mo. 138. The rule is one which springs from the implied limitation of the agency, and hence there is no difference in principle whether the breach of trust is one of which a partner is guilty, or one of which an officer of a corporation is guilty. *St. Louis Carriage Manufacturing Company v. Hilbert*, 24 Mo. App. 338; *Dunlap v. Elks Social Club*, 25 Mo. App. 180–184. In either event a person who acquires the property, whatever its character may be, with knowledge of the breach of trust is debarred of recovery. The instruction complained of submitted to the finding of the jury whether the plaintiff knew, when he bought the note, that it was the property of the corporation, and to be disposed of for corporate purposes. The submission of the additional question for their finding, whether the plaintiff took the note for the payment of Stebbins' individual debt, was an error in plaintiff's favor, of which he has no reason to complain since there was no controversy touching this matter. Nor has the plaintiff any reason to complain of other instructions given on his behalf, which put the same proposition to the jury in more general terms, and in terms less favorable to the defendants.

Nor has the plaintiff any right to complain of any inconsistency between instructions G and H, one of

which required the jury to find from the evidence that the defendants did not consent to the sale of the note by Stebbins, as a condition precedent to the validity of their defense, and the other of which contained no such qualification. The qualification in instruction G was one to which the plaintiff was not entitled, since there was no evidence to support it, but all the evidence was to the contrary. Hence, whatever inconsistency there was between these instructions was one which redounded clearly to the benefit of the plaintiff.

The burden of proof that he was a holder in good faith rested with the plantiff throughout. He acquitted himself of that burden in the first instance by producing the note. When the defendant adduced evidence that the note had been fraudulently negotiated, the plaintiff, to maintain the burden cast upon him, was bound to show that he paid consideration for the note. Good faith in paying the consideration is presumed, unless rebutted by the circumstances. Plaintiff's knowledge of a breach of trust on part of his vendor necessarily rebuts the presumption of good faith. If plaintiff knew that the note was the property of the defendant company, and that it was in the hands of Stebbins for the purpose of being negotiated for the company, and with such knowledge bought the note in whole or in part for a consideration consisting of Stebbins individual debt to him, he bought it in bad faith as a matter of law. There is nothing in the case of *Hamilton v. Marks* on its second appeal (63 Mo. 167), which in the least militates against this position.

All the judges concurring, the judgment is affirmed.